UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALI ALEJANDRO MENDOZA, an individual,<br><br>                            Plaintiff,<br>v.<br><br>CITY OF NATIONAL CITY; BENJAMIN PECK,<br><br>                           Defendants. | Case No.: 18cv775-JAH-BGS<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS CITY OF NATIONAL CITY AND BENJAMIN PECK'S MOTION FOR SUMMARY JUDGMENT** |

**INTRODUCTON**

Pending before the Court is Defendant National City's ("National City") and Benjamin Peck's ("Defendant Peck" or "Peck") (collectively "Defendants") motion for summary judgment. After careful consideration of the record, including the pleadings and exhibits submitted by the parties, and for the reasons set forth below, Defendants' motion is **GRANTED IN PART AND DENIED IN PART**, as set forth herein.

**BACKGROUND**

1. **Factual Background**

On July 12, 2014, Plaintiff Ali Alejandro Mendoza ("Plaintiff" or "Mendoza"), a 19-year-old male, was crossing a two-lane intersection within a marked crosswalk with a

friend. As they crossed the street, Plaintiff looked over and saw that the vehicle was going to collide with them. Plaintiff pushed his friend out of the way, was struck by the vehicle, and rolled into the windshield. The vehicle was driven by Thomas Malandris, a Special Agent of the Department of Homeland Security.

Plaintiff was then transferred to the hospital by ambulance, where he was administered 8 milligrams of morphine for his pain. Shortly thereafter, an officer with the National City Police arrived at the scene, called for an ambulance, and initiated a traffic collision investigation. National City Police Officer Benjamin Peck ("Defendant Peck" or "Peck") completed the portion of the traffic collision report relating to Plaintiff. Peck next went to the hospital after the collision to interview Plaintiff.

Upon arrival Peck confiscated a pipe from Plaintiff and began questioning him about his use of illegal drugs, after which Plaintiff admitted to smoking marijuana earlier in the day. Peck claims that he obtained knowing and voluntary consent from Plaintiff for a blood draw, but Plaintiff does not recall giving any consent, and the blood was never tested for marijuana. Plaintiff also admitted during his deposition to inhaling five puffs from a water pipe (bong) earlier that day.

**2. Procedural Background**

On July 10, 2015, Plaintiff filed a suit for damages, asserting a claim for Negligence against the USA and Defendant National City. Defendant National City answered the Complaint on July 31, 2015. On February 24, 2016, Plaintiff moved this Court for leave to file a First Amended Complaint ("FAC"). Defendant's motion was granted on April 19, 2016, and Plaintiff timely filed his FAC on April 29, 2016. The FAC joined Defendants Malandris, Peck, and Nuttal, and asserted seven causes of action: (1) Negligence; (2) violations of Cal. Civ. Code §§ 51, 52, 52.1, the Bane Act; (3) violations of 42 U.S.C. § 1983; (4) violations of 42 U.S.C. §§ 1985(2)-(3); (5) violations of § 42 U.S.C. § 1986; (6) Intentional Infliction of Emotional Distress (IIED); and (7) violations of federal civil rights, under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

On May 13, 2016, Defendant National City filed its motion for summary judgment and partial summary judgment. Neither motion was briefed. In lieu of responding to Defendants' motion for summary judgment, Plaintiff filed a Second Amended Complaint ("SAC") on May 31, 2016, asserting seven causes of action against Defendants USA, National City, Malandris, Peck, and Nuttal, for (1) Negligence; (2) violations of Cal. Civ. Code §§ 51, 52, 52.1, the Bane Act; (3) violations of 42 U.S.C. § 1983; (4) violations of 42 U.S.C. §§ 1985(2)-(3); (5) violations of § 42 U.S.C. § 1986; (6) IIED; and (7) violations of federal civil rights, under *Bivens*.

On June 13, 2016, the National City Defendants filed a motion for summary judgment or partial summary judgment, as to the SAC. On March 31, 2017, the Court granted the defendants motion with respect to (1) the claim of dual liability against the United States and National City for the actions of Officer Malandris, (2) the fact that the United States was the sole employer of Officer Malandris, and therefore National City cannot be liable for Malandris's actions through respondeat superior, and (3) Mendoza's IIED claim. *See* Case No. 15-cv-1528, Dkt. 116. The Court further granted the defendants' motion, finding that (1) the National City defendants, including Defendant Peck, fell under Cal. Govt. Code § 821.6 and were immune from liability for the alleged negligent and reckless failure to investigate the collision, and (2) the United States Constitution does not provide a fundamental right to a corrected traffic report. *See id.* But denied the motion with regard to whether Plaintiff's civil rights were violated during the events leading up to and including Defendant Peck's hospital interview and Plaintiff's consent to the blood draw. *See id.*

On January 5, 2018, Defendants National City and Peck filed a Motion to Amend the Scheduling Order, in which they sought permission to file a successive motion for summary judgment. Specifically, Defendants argued they had not had a proper opportunity to fully brief their qualified immunity defense with regard to Plaintiff's Fourth and Fifth Amendment claims and Bane Act claims. *See* Case No. 15-cv-1528, Dkt. 141. Therefore, on April 20, 2018, the Court granted Defendants National City and Peck's motion

permitting them to file a successive motion for summary judgment specifically limited to their qualified immunity defense. *See* Case No. 15-cv-1528, Dkt. 155. That same day, the Court granted Defendants National City and Peck's joint motion to sever Plaintiff's claims against them from the remaining defendants in the original case. *See* Case No. 15-cv-1528, Dkt. 156. Thus under the instant case number, Defendants National City and Peck seek a summary judgment order finding that Defendant Peck is entitled to qualified immunity with regard to Plaintiff's constitutional claims. The matter has been fully briefed. The Court took the matter under submission.

## DISCUSSION

**1. Summary Judgment Standard**

Summary judgment is appropriate under Rule 56(c) of the Federal Rules of Civil Procedure where the moving party demonstrates the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is material when, under the governing substantive law, it could affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997). A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

A party seeking summary judgment always bears the initial burden of establishing the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 323. The moving party may satisfy this burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *Id*. at 322-23. Where the party moving for summary judgment does not bear the burden of proof at trial, it may show that no genuine issue of material fact exists by demonstrating that "there is an absence of evidence to support the non-moving party's case." *Id*. at 325. The moving party is not required to produce evidence showing the absence of a genuine issue of material fact,

nor is it required to offer evidence negating the moving party's claim. *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 885 (1990); *United Steelworkers v. Phelps Dodge Corp.*, 865 F.2d 1539, 1542 (9th Cir. 1989). "Rather, the motion may, and should, be granted so long as whatever is before the District Court demonstrates that the standard for the entry of judgment, as set forth in Rule 56(c), is satisfied." *Lujan*, 497 U.S. at 885 (quoting *Celotex*, 477 U.S. at 323). "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

"The district court may limit its review to the documents submitted for purpose of summary judgment and those parts of the record specifically referenced therein." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1030 (9th Cir. 2001). Therefore, the court is not obligated "to scour the record in search of a genuine issue of triable fact." *Keenan v. Allen*, 91 F.3d 1275, 1279 (9th Cir. 1996) (citing *Richards v. Combined Ins. Co.*, 55 F.3d 247, 251 (7th Cir. 1995)). If the moving party fails to discharge this initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159-60 (1970).

If the moving party meets the initial burden, the nonmoving party cannot defeat summary judgment merely by demonstrating "that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see also Anderson*, 477 U.S. at 252 ("The mere existence of a scintilla of evidence in support of the nonmoving party's position is not sufficient."). Rather, the nonmoving party must "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (quoting Fed.R.Civ.P. 56(e)) (internal quotations omitted).

When making this determination, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party. *See Matsushita*, 475 U.S. at 587. "Credibility determinations, the weighing of evidence, and the drawing of

legitimate inferences from the facts are jury functions, not those of a judge, [when] he [or she] is ruling on a motion for summary judgment." *Anderson*, 477 U.S. at 255.

The Ninth Circuit has previously acknowledged that declarations are often self-serving, and this is properly so because the party submitting it would use the declaration to support his or her position. *S.E.C. v. Phan*, 500 F.3d 895, 909 (9th Cir. 2007) (holding that the district court erred in disregarding declarations as "uncorroborated and self-serving"). Although the source of the evidence may have some bearing on its credibility and on the weight it may be given by a trier of fact, the district court may not disregard a piece of evidence at the summary judgment stage solely based on its self-serving nature. See id. However, a self-serving declaration that states only conclusions and uncorroborated facts would not generally be admissible evidence. *See id.*; *see also Villiarimo v. Aloha Island Air, Inc.,* 281 F.3d 1054, 1059 n. 5, 1061 (9th Cir. 2002) (holding that the district court properly disregarded the declaration that included facts beyond the declarant's personal knowledge and did not indicate how she knew the facts to be true); *F.T.C. v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997) ("A conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact.").

### 2. Qualified Immunity

Defendants argue they are entitled to Summary Judgment on Plaintiff's Fourth and Fifth Amendment based § 1983 claims, because Defendant Peck is entitled to qualified immunity. Under established precedent, "[q]ualified immunity 'gives government officials breathing room to make reasonable but mistaken judgments,' and 'protects all but the plainly incompetent or those who knowingly violate the law.'" *Messerschmidt v. Millender*, 565 U.S. 535, 547 (2012) (citing *Aschroft v. al-Kidd*, 563 U.S. 731, 743 (2011)). "[Q]ualified immunity is important to society as a whole and because, as an immunity from suit, qualified immunity is effectively lost if a case is erroneously permitted to go to trial." *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (per curiam) (quotation marks and citations omitted).

Under the doctrine of qualified immunity, officials are protected from civil liability "so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231(2009). The qualified immunity analysis requires a two-prong test; the Court must determine 1) whether the plaintiff's alleged facts establish a violation of a constitutional right, and 2) whether that right was clearly established at the time of the defendant's alleged misconduct. *Frudden v. Pilling*, 877 F.3d 821, 831 (9th Cir. 2017) (quoting *Pearson*, 555 U.S. at 232). Courts may engage the two prongs in any order, but under either prong courts may not resolve genuine disputes of fact in favor of the party seeking summary judgment, as an extension of general rules of summary judgment. *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (citations omitted). Both prongs must be satisfied to overcome a qualified immunity defense. *Shafer v. Cty. Of Santa Barbara*, 868 F.3d 1110, 1115 (9th Cir. 2017).

///

///

# ANALYSIS

### 1. Fourth Amendment Search

The Court looks first to the second prong of the qualified immunity analysis - whether that right Plaintiff asserts was violated was clearly established at the time of the defendant's alleged misconduct. The Supreme Court has held that invasions of the body are searches and therefore entitled to protection under the Fourth Amendment. *Skinner v. Ry. Labor Executives' Ass'n*, 489 U.S. 602, 616-17, 109 S. Ct. 1402, 103 L. Ed. 2d 639 (1989) (breathalyzer and urine sample); *Cupp v. Murphy*, 412 U.S. 291, 295, 93 S. Ct. 2000, 36 L. Ed. 2d 900 (1973) (fingernail scrapings); *Schmerber v. California*, 384 U.S. 757, 767-71, 86 S. Ct. 1826, 16 L. Ed. 2d 908 (1966) (blood). In *Schmerber*, the Supreme Court plainly stated: "The interests in human dignity and privacy which the Fourth Amendment protects forbid any such intrusions on the mere chance that desired evidence might be obtained," concluding "[t]he importance of informed, detached and deliberate

determinations of the issue whether or not to invade another's body in search of evidence of guilt is indisputable and great."

Defendants assert that the burden is on Plaintiff to prove that the right allegedly violated was clearly established at the time of the blood draw. *Shafer v. Cty. Of Santa Barbara*, 868 F.3d 1110, 1118 (9th Cir. 2017). However, while the law of the Ninth Circuit is conflicting on the burden issue[1], the Court finds it may resolve this second prong inquiry without engaging in that analysis as "[t]he rule that a search violates the Fourth Amendment if it is not supported by either probable cause and a warrant or a recognized exception to the warrant requirement has long been clearly established." *Friedman*, 580 F.3d at 858. Furthermore, precedent from both the Supreme Court and the Ninth Circuit makes clear that such invasions of the body, absent a warrant or applicable exception, are unreasonable and therefore violate the Fourth Amendment. *Minnesota v. Dickerson*, 508 U.S. 366, 372 (1993) ("[S]earches and seizures 'conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment -- subject only to a few specifically established and well delineated exceptions'"); *Friedman v. Boucher*, 580 F.3d 847, 858 (9th Cir. 2009) ("The warrantless, suspicionless, forcible extraction of a DNA sample from a private citizen violates the Fourth Amendment"). As a result, the Court finds that the right asserted by Plaintiff was clearly established at the time of the defendant's alleged misconduct.

Next, the Court considers the first prong - whether the plaintiff's alleged facts establish a violation of a constitutional right. Defendants cannot and do not argue that a warrantless blood draw from Mr. Mendoza, who was under suspicion of no crime, would not violate the Fourth Amendment. Rather, Defendants argue that Plaintiff consented to

---

[1] Established Ninth Circuit precedent places the burden squarely on the plaintiff to prove that the right allegedly violated was clearly established at the time of the alleged misconduct. *LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1157 (9th Cir. 2000); *Romero v. Kitsap County,* 931 F.2d 62, 627 (9th Cir. 1991). However, more recent precedent holds that "[q]ualified immunity is an affirmative defense that the government has the burden of pleading and proving." *Frudden v. Pilling*, 877 F.3d 821, 831 (9th Cir. 2017).

8

18cv775-JAH-BGS

the blood draw, and therefore the blood draw falls within an established exception to otherwise binding Fourth Amendment precedent. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973) ("It is [] equally well settled that one of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent (citations omitted)").

It is well established that when the government "seeks to rely upon consent to justify the lawfulness of a search, it has the burden of proving that the consent was, in fact, freely and voluntarily given." *Schneckloth*, 412 U.S. at 222 (quoting *Bumper v. North Carolina*, 391 U.S. 543, 548); *United States v. Soriano*, 361 F.3d 494, 501 (9th Cir. 2004). Thus, with Fourth Amendment searches, "the real question in determining whether Defendants are entitled to qualified immunity is whether it was clearly established, at the time of the search, that such a search fell under any recognized exception." *Id.* And whether consent was voluntarily given "is a question of fact to be determined from the totality of all the circumstances." *Schenckloth* at 227. As evidence that Plaintiff did in fact consent to the blood draw, Defendants rely on the declaration of Defendant Peck and the portions of the Traffic Collision Report he prepared, in which he states Mr. Mendoza consented to the blood draw, and that he obtained and logged into evidence a medical release for the blood draw signed by Plaintiff.[2]

Plaintiff, on the other hand, argues that he has no memory of consenting to the blood draw. He recalls only that it occurred. Plaintiff further argues that he was not capable of consenting, because he had just sustained a traumatic head injury and had been sedated with morphine to address his pain. In deposition excerpts submitted with his Response and Opposition to the instant motion, Plaintiff testified that he did not consent to the blood draw or that he cannot remember consenting to the blood draw, both because of his injury and the morphine injection. Furthermore, post-collision medical records submitted by Plaintiff

---

[2] The release form was not attached to the motion.

9

reveal he was administered 8 milligrams of morphine in the ambulance as he was transferred to the hospital.

When ruling on a motion for summary judgment, the Supreme Court has made clear a court's evidentiary function is limited:

> "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict. *The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.*"

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (emphasis added) (citations omitted).

Here, the Court has only the parties' conflicting accounts and Plaintiff's medical records to reference. Drawing all inferences in favor of Mr. Mendoza, Plaintiff has established a genuine issue of material fact for trial as to whether he ever consented to the blood draw or whether was even able to consent. A triable issue of fact therefore remains as to whether Defendants violated Plaintiff's Fourth Amendment rights.

Accordingly, Defendants' motion for summary judgment, with regard to qualified immunity on Plaintiff's Fourth Amendment claims, is **DENIED**.

### 2. Fifth Amendment

Applying the two-prongs of the qualified immunity test to Plaintiff's Fifth Amendment claims, the Court finds that Plaintiff has not alleged facts sufficient to establish a constitutional violation. The Fifth Amendment provides that "[n]o person shall be compelled in any criminal case to be a witness against himself." Under *Chavez v. Martinez*, the Ninth Circuit has held that the Fifth Amendment right against compelled self-incrimination applies only when a compelled statement is used against a defendant in a criminal case. *See Chavez v. Martinez*, 538 U.S. 760, 766-67 (2003) (plurality opinion); *United States v. Hulen*, 879 F.3d 1015, 1018 (9th Cir. 2018); *Stoot v. City of Everett*, 582 F.3d 910, 922-23 (9th Cir. 2009).

Defendants argue that, because Plaintiff has not alleged that any statements offered during Peck's questioning were ever used against him in any subsequent criminal proceeding, he fails to show that his Fifth Amendment rights were violated. In *Stoot v. City of Everett*, the Ninth Circuit held:

> "A coerced statement has been 'used' in a criminal case when it has been relied upon to file formal charges against the declarant, to determine judicially that the prosecution may proceed, and to determine pretrial custody status. Such uses impose precisely the burden precluded by the Fifth Amendment: namely, they make the declarant a witness against himself in a criminal proceeding." *Stoot*, 582 F.3d at 925.

As a matter of law, Plaintiff cannot establish a Fifth Amendment violation if none of his statements were relied upon to file formal charges against him, to determine judicially that prosecution against him may proceed, or to determine his pretrial custody status. Viewing the facts and evidence in a light favorable to Plaintiff, the record shows that Plaintiff was never criminally investigated or prosecuted for a crime where his statements regarding marijuana use or any other statement allegedly made to Defendant Peck would have been used. As such, Plaintiff's alleged facts do not establish a violation of constitutional law on his Fifth Amendment claim.[3] Accordingly, Defendants' motion for summary judgment based upon qualified immunity on Plaintiff's Fifth Amendment claims is **GRANTED**.

Alternatively, Plaintiff argues that even if Peck's questioning did not constitute a Fifth Amendment violation, "it is well established that unlawful police interrogation techniques can 'give rise to a substantive due process claim under the Fourteenth Amendment.'" *Stoot* at 923. Plaintiff contends that Peck conducted his questioning about

---

[3] The Court need not address the second prong of the qualified immunity analysis. *Shafer*, 868 F.3d at 1115 ("These two prongs of the analysis need not be considered in any particular order, and *both* prongs must be satisfied for a plaintiff to overcome a qualified immunity defense.").

Plaintiff's marijuana use in order to protect one of his own, in an attempt to insulate a law enforcement officer from the consequences and liability of colliding with Plaintiff while driving his official government law enforcement vehicle. Plaintiff's due process argument is presented despite failing to allege a substantive due process violation under the Fourteenth Amendment as a basis for his § 1983 claim in his Amended Complaint.

Plaintiff may not now seek to add a claim by raising it in opposition to a properly brought motion for summary judgment. *Wasco Prods., Inc. v. Southwall Techs., Inc.*, 435 F.3d 989, 992 (9th Cir. 2006) ("Simply put, summary judgment is not a procedural second chance to flesh out inadequate pleadings.") (internal quotation marks omitted). The Court finds Plaintiff's substantive due process claim, having been raised for the first time in opposition to a motion for summary judgment, should not be entertained at this stage of the proceeding.

However, even assuming Plaintiff's substantive due process claim was properly before the Court, it would not survive summary judgment because it does not satisfy the qualified immunity analysis. Ninth Circuit precedent makes clear that unless there is an obvious case of constitutional misconduct, plaintiffs must identify controlling caselaw from the Ninth Circuit or United States Supreme Court which "articulates a constitutional rule specific enough to alert" Peck that his "particular conduct was unlawful." *Sharp v. Cty. of Orange*, 871 F.3d 901, 911 (9th Cir. 2017). While a case need not be directly on point, Plaintiff has not cited any specific case or controlling authority placing the statutory or constitutional question beyond debate, such that a reasonable officer would have known or understood that the conduct complained of would violate that right. *Reichle v. Howard*, 566 U.S. 658 (2012); *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2083 (2011). Even if Plaintiff arguably alleged a Fourteenth Amendment claim(s), the first prong of the qualified immunity test has not been met, and qualified immunity protects Officer Peck against Mendoza's Fourteenth Amendment claim(s) as a matter of law.

///

///

### 3. Bane Act Claims

Defendants argue Plaintiff's Bane Act claims are predicated on his Fourth and Fifth Amendment claims, and, therefore, they fail because Plaintiff's Fourth and Fifth Amendment claims also fail. Defendants conclude with a footnote inviting the Court to reconsider its prior denial of summary judgment on Plaintiff's Bane Act claim. However, none of Defendants' arguments inform the Court of *the effect of its qualified immunity defense* on Plaintiff's Bane Act claims, and therefore fall outside of the narrow scope proscribed by this Court's prior Order. As Plaintiff argues in opposition, qualified immunity is a federal doctrine that does not extend to state claims. *Johnson v. Bay Area Rapid Transit Dist.*, 724 F.3d 1159, 1171 (9th Cir. 2013) ("[T]he doctrine of qualified immunity does not shield defendants from state law claims."); *Cousins v. Lockyer*, 568 F.3d 1063, 1072 (9th Cir. 2009) (holding that "California law is clear" that qualified immunity is a federal doctrine that does not apply to tort or civil rights claims under state law); *Venegas v. Cty. Of Los Angeles*, 153 Cal.App.4th 1230, 1246 (2007) ("[Q]ualified immunity of the kind applied to actions brought under 42 [U.S.C. § 1983] does not apply to actions brought under section 52.1"). Furthermore, California's Bane Act protects against a person who "interferes by threat, intimidation, or coercion, or [who] attempts to interfere by threat, intimidation, or coercion, with the exercise or enjoyment by any individual or individuals *of rights secured by the Constitution or laws of the United States*…" Cal. Civ. Code § 52.1. As such, to the extent Plaintiff's Bane Act claims are in fact predicated on the alleged Fourth Amendment violation, they will be permitted to proceed. The Court finds Defendants have not satisfied their initial burden on summary judgment with regard to the Bane Act claims, and Defendants' motion on this issue is **DENIED**.

///

///

///

# CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED**:

1. Defendants' motion for Summary Judgment is **GRANTED IN PART AND DENIED IN PART**, as follows:

    a. The Court finds that Plaintiff established a genuine dispute of material fact as to whether he ever consented to Defendant Peck's blood draw. Defendants' motion for summary judgment as to Plaintiff's Fourth Amendment claim is **DENIED**;

    b. Defendants' motion for summary judgment as to Plaintiff's Fifth Amendment claims is **GRANTED**;

    c. Defendants' motion for summary judgment as to Plaintiff's Bane Act claims is **DENIED**.

**IT IS SO ORDERED.**

DATED: July 9, 2021

_____
JOHN A. HOUSTON
UNITED STATES DISTRICT JUDGE